### PHOEBE E. HOHLY ET AL. v. RACHEL E. SHEELY.

1. RULE AS TO LIABILITY FOR NEGLIGENCE.

In an action for personal injuries brought by the tenant of a building against the owner thereof and her agent, for negligence in failing to keep a cellar door closed, the liability of the owner rests upon her ownership, and the liability of the agent upon actual participation in the wrong.

2. PHOTOGRAPH TO DESCRIBE PREMISES IN EVIDENCE.

A photograph of premises where an accident occurred which appears to be substantially correct and which is used by witnesses on both sides in describing such premises in the presence of the jury, and introduced in evidence and submitted to the jury as an exhibit, must be regarded as evidence, and not merely upon the footing of a view of premises by a jury.

3. OMISSION OF PHOTOGRAPH FATAL TO BILL OF EXCEPTIONS.

A reviewing court is not, therefore, at liberty to consider a case on error upon the question of the weight of evidence where it appears that a photograph of certain premises, used for the purpose of describing such premises, and introduced in evidence as an exhibit, is not attached to the bill of exceptions, although the bill contains the usual certificate that it contains all the evidence submitted to the jury.

4. EXCEPTION TO RULE REQUIRING ALL THE EVIDENCE.

In some cases, where it has been made fairly to appear from the bill of exceptions that certain evidence has been lost and such fact is certified by the trial court before whom the bill of exceptions was made up, it has been held that the reviewing court may consider the record in determining the weight of evidence notwithstanding the omission of such evidence.

5. PRESUMPTION THAT EVIDENCE WAS MATERIAL.

In the absence of evidence to the contrary, it must be presumed that evidence admitted was competent and material and it is necessary that the immateriality of the evidence omitted must be disclosed or the omission thereof will be fatal.

*Hamilton & Kirby,* for plaintiff in error.

*U. G. Denman* and *Chas. R. Clapp,* for defendant in error, cited:

Review on the weight of the evidence. Armleder v. Lieberman, 33 Ohio St., 77 [31 Am. Rep., 530] ; Toledo v. Libbie, 8 Circ. Dec., 589 [19 R. 704]. City ordinance not attached: Foster Coal Co. v. Moherman, 6

Circ. Dec., 437, 440, (9 R., 544). Of map not attached: Butchers' Savings Co. v. Woodward, 6 Circ. Dec., 658; The N. Y. Life Ins. Co. v. Block, 6 Circ. Dec., 166 (12 R. 224). Depositions not attached: P. & St. L. Ry. v. Millikin, 10 Circ. Dec., 255 (18 R. 594).

Plaintiff in error retained control of the cellar way where defendant was injured, and, therefore, owed defendant the duty of ordinary care to keep the way closed.

Toledo R. & Inv. Co. v. Putney, 10 Circ. Dec., 698 (20 R. 476), and cases cited; Dorse v. Fisher, 10 Dec. (Re.), 163 (19 B., 106); Penn. Ry. v. Snyder, 55 Ohio St., 342, 361 [45 N. E. Rep., 559; 60 A. S. Rep. 700]; Beck v. Coster, 68 N. Y., 283. Cellar way off alley: Corby v. Hill, 4 C. B. (N. S.), 556; 10 Allen, 368; Binney v. Carney, 46 N. Y. Sup., 307. Trap-door in closet: Toomey v. Sanborn, 14 N. E. Rep., 921 [146 Mass., 28]; 88 N. C., 129; Camp v. Wood, 76 N. Y., 92 [32 Am. Rep., 282]; Farris v. Hoberg, 33 N. E. Rep., 1020 [134 Ind., 269]; Kelley v. Columbus, 41 Ohio St., 263.

Question of invitation was for jury: Pelton v. Schmidt, 62 N. W. Rep., 552 [104 Mich., 345-8; 53 A. S. Rep., 462].

Opening of door by stranger: If the door had been opened by stranger, and plaintiffs might have discovered it in the exercise of ordinary care but failed, they would be liable. Colo. Mtg. & Inv. Co. v. Rees, 42 Pac. Rep., 42 [21 Colo., 435]; Baumeister v. Markham, 39 S. W. Rep., 844, 41 S. W. Rep., 816 [101 Ky., 122; 72 A. S. Rep., 397].

Plaintiffs were bound to be active and exercise affirmative care to keep the door closed: Dinniham v. Beach Imp. Co., 40 N. Y. Sup., 764; 68 N. Y., 283.

Greater diligence required of plaintiffs than of defendant in error: Quigley v. Mfg. Co., 26 App. Div. (N. Y.), 434.

Two ways of opening blinds—Not negligence as a matter of law in choosing one or the other, though one be safe and the other may not be: O'Callaghan v. Bode, 24 Pac. Rep., 269 [84 Cal., 489]; Wabash R. R. v. Heeter, 7 Circ. Dec., 485 (14 R. 257); Pennsylvania Ry. v. Snyder, 55 Ohio St., 342-361 [45 N. E. Rep., 559; 60 A. S. Rep., 700].

Contributory negligence: Defendant in error was not guilty of contributory negligence: Camp v. Wood, 76 N. Y., 92 [32 Am. Rep., 282]; Watson v. Land Co., 8 So. Rep., 770 [92 Ala., 320].

PARKER, J.

This is a proceeding brought to reverse a judgment of the court of common pleas. In the court below Rachel E. Sheely brought an action against Phoebe E. Hohly, Reed Hohly, and Paul Hohly, a minor over fourteen years old, to recover damages on account of alleged injuries received upon certain premises which it appears were owned by Phoebe E. Hohly, who is the mother of the other defendants. These premises were occupied by Mrs. Sheely as tenant of Mrs. Hohly. The ground of the action was negligence on the part of the defendants in failing to keep a certain outside cellar door closed, whereby Mrs. Sheely, who had a right to the use of that part of the premises, inadvertently fell into the cellar way and was injured. The liability of Mrs. Hohly rests upon her ownership; the liability of the other defendants rests, according to the rulings of the trial court, upon the actual participation in the alleged wrong doing. On the trial it appeared that there was no evidence tending to fix liability upon

Paul Hohly, and the court directed a verdict in his favor; but a verdict was returned against Phoebe E. Hohly and Reed Hohly, her son, for $400, and judgment was entered upon it. A motion for a new trial was made and overruled. It is claimed here that there was error in that action on the part of the court, since the verdict was against the weight of the evidence, and was not sustained by the evidence. It is also contended by the plaintiff in error that the court erred in its charge to the jury.

It is urged by counsel for defendant in error that this court is not at liberty to consider this cause upon the question of the weight of the evidence, since (it is said) it does not appear from the bill of exceptions that all the evidence is brought up. The bill of exceptions contains the usual certificate that it contains all of the evidence submitted to the jury; but it appears that a certain photograph which was used for the purpose of describing the premises, and to aid the witnesses in describing the premises, and which was introduced in evidence as an exhibit, is not attached to the bill of exceptions.

It is well settled in this state, as stated in Tilton v. Morgaridge, 12 Ohio St., 98, that the bill of exceptions should contain all the evidence. In that case, on page 102, the court say: "The bill of exceptions sets forth the evidence given on the trial both on the part of the plaintiff and defendants, and the judge therein certifies it to contain 'all the evidence introduced by plaintiff for the purpose of proving or tending to prove the arrest of the plaintiff upon said warrant, issued by Joseph Clark, justice, and all the proof of defendant tending to disprove the matters charged.' But it is not certified, nor does it appear by necessary implication, that the bill of exceptions contains *all the evidence* given upon the trial, which is indispensably necessary to enable this court to determine whether the court below did or did not err in overruling the motion for a new trial for the alleged cause that the verdict is against the evidence." In Hicks v. Person, 19 Ohio, 426, it is said that "the reviewing court must have precisely the same evidence." That is said in the head note, but that is not the precise language of the court in delivering the opinion, although perhaps what is there said amounts to that: The reviewing court must have the same evidence. P. Ft. W. & C. Railway Co. v. Probst, 30 Ohio St., 104, is authority to the effect that it is not sufficient to bring up the substance of the evidence. If the bill of exceptions sets forth that it contains the substance of the evidence, that will not answer. And although the bill of exceptions states that it contains all the evidence, if on examination it appears that material evidence or documents referred to are omitted, the reviewing court cannot consider it on the weight of the evidence. Armleder v. Lieberman, 33 Ohio St., 77. The language of the court as to the material evidence in that case being "all the evidence * * * which was deemed material, and admitted in the trial court."

These authorities have been followed by the circuit court in a great many reported cases, and by this court in Toledo v. Libbie, 8 Circ. Dec., 589, which was affirmed by the Supreme Court without report in 51 Ohio St., 562; also in C. H. & D. Railway Co. v. Curtis, 9 Circ. Dec., 112, where the matter is very fully discussed by Judge Bentley. The decision in that case declares the rigidity of the rule very forcibly. The bill of exceptions set forth that it contained all the evidence excepting that pertaining to the plaintiff's injuries, it being an action to recover on account of negligence. And it is held:

Hohly v. Sheely.

"The rule in Ohio that a bill of exceptions must contain all the evidence in the case in order to enable the circuit court to reverse a judgment as against the weight of the evidence, is so absolute that the judgment will not be disturbed if evidence is omitted, although the bill may certify that such evidence, or 'all other testimony offered in behalf of plaintiff related solely to the character and extent of plaintiff's injuries.' "

These rules have been applied by the circuit courts in the case of Alliance Review Pub. Co. v. Valentine, 6 Circ. Dec., 323, where a copy of a newspaper in a libel case was not attached; in Foster Coal Co. v. Moherman, 6 Circ. Dec., 437, a personal injury case occurring in a coal mine, where a map or chart of the coal mine which was used upon the trial was not attached; in Mulligan v. Receiver, 8 Circ. Dec., 722, also a negligence case, where articles of clothing which had been upon the person injured at the time he was injured were exhibited to the jury, and introduced in evidence, but not attached to the bill of exceptions. Of course there are certain things that may be included without corporal or physical attachment to a bill of exceptions: it may be done by reference or by identification. It would not be proper, of course, to attach a suit of clothes manually to a bill of exceptions. It can be done by reference and identification. Large and cumbersome objects are often attached in that way, but they must be referred to so as to be identified with certainty. In this case the photograph is not brought forward at all. In Toledo v. Libbie, 8 Circ. Dec., 689, certain city ordinances were not attached to the bill of exceptions, though upon the reading of the case it is not apparent what bearing those ordinances had upon the issues involved. That is not disclosed by the bill of exceptions.

I may remark that it was stated by counsel for plaintiff in error in argument that this photograph had been lost, so that he was unable to attach it to the bill of exceptions. What a court of review would do if that fact were made to appear in the bill of exceptions, and the best possible effort had been made to substitute the lost evidence, we are not called upon to say here, because the matter is not presented in that way. There are cases, however, where such situation is made to fairly appear from the bill of exceptions, and the facts are certified by the trial court before whom the bill of exceptions was made up, in which it is held that the reviewing court may consider the record, notwithstanding the omission of some of the evidence.

And it appears that it is unnecessary that the materiality of the evidence omitted should be disclosed to make such omission fatal. If it is wholly and utterly immaterial, and that fact is disclosed, it may be and probably is true that the omission of such immaterial evidence would not be held to be fatal. But in the absence of evidence to the contrary, if matter is admitted in evidence, it must be presumed to have been competent and material.

It seems to us, therefore, that the only question remaining for us to consider upon this branch of the case, is whether a photograph is evidence. It is contended in argument by counsel for plaintiff in error that it stands upon the footing of a view of the premises which may be had by a jury; that the photograph may be looked at by the jury for the purpose of assisting in trying the case and yet need not be regarded as evidence. What this photograph may have disclosed by way of corroboration or in contradiction of the other evidence—that is to say, the testimony of the witnesses—is not apparent. The whole case might

be made, so far as a description of the place where the accident occurred is concerned, by a photograph. It appears that this photograph was used by a number of witnesses, both for the plaintiff below and the defendant below, in describing the premises. They point to it, and speak of "this window," and "this part of the building," and "this part of the premises," etc., indicating what they refer to by pointing to the photograph. And this was done in the presence of the jury, and the photograph with their testimony went to the jury. On page 72 of the bill of exceptions this appears: Bertha L. Sheely is testifying on behalf of the plaintiff, her mother: She is asked:

Q. "Do you know how wide the sink was?" A. "About a foot and a half."

Q. "On which side of the kitchen was it in regard to the stove, the same side or opposite?" A. "On the opposite side."

Q. "Now there is a little porch there, and underneath the step was there, and a little porch you stepped out onto."

And the court says: "You have got a photograph of it, and we will assume that is understood." So that no answer was made. It is only one instance among a number where the photograph was alluded to.

Now, that the photograph was introduced in evidence appears on page 6. Mr. Denman inquires of Mrs. Sheely.

Q. "Are you acquainted with the defendants Reed, Paul, and Mrs. Hohly?" A. "Yes, sir."

Q. "I show you a photograph, Mrs. Sheely, which the stenographer may mark plaintiff's exhibit A, and ask you if that is a fair representation of the east side of that house in which you lived at that time, the 10th of October, 1898?" A. "That is all right, except these banisters were not there. The banisters in the picture along the porch were not there at the time I refer to."

(The photograph, plaintiff's exhibit A, was here introduced in evidence.)

Mr. Hamilton:

"I object to the photograph going in evidence at all."

The Court: (To the witness)

Q. "Were you present when the photograph was taken?" A. "No, sir."

Q. "It was taken after the injury?"

Mr. Denman:

"Of course. This is a matter within the discretion of the court."

The Court:

"It would really be a benefit to both parties. She says it is a correct photograph except the banisters. The question will be taken care of when I come to charge the jury. It is admitted in evidence."

That the photograph then used is to be regarded as evidence, and not as a view of the premises by the jury, we think is apparent from the nature of the matter, and also from the authorities. I read from Sec. 869, Thompson on Trials:

"Next to an inspection of the object itself a photograph becomes its most accurate and convenient representation; and where an inspection

of the object is proper but impracticable, a photograph of it may be exhibited to the witnesses as an aid in identification, and may be admitted in evidence, and in the discretion of the court examined by the jury through a stereoscope or other magnifying glass, and taken by them to their room.   So in an action for damages for an injury to real estate, a photograph of the premises taken at the time, is admissible for the purpose of showing the nature and extent of the injury."

And in a note is indicated a variety of cases in which photographs have been admitted in evidence, and among the cases is that of Ruloff v. The People, 45 N. Y. App., 213.   I read from 224:

"Objection was also taken to the admission of the photographic likenesses of the two persons found drowned.   Evidence was given of the manner in, and disadvantagous circumstances under which they were taken; and the evidence was that they were not artistic pictures, nor in all respects the most perfect likenesses that could be taken.   This was fully explained by the artist, and the reasons why they were not more perfect, stated.   They were submitted to the witnesses, not as themselves, and alone, sufficient to enable them to identify the persons with entire certainty, but as aids, and with other evidence, to enable the jury to pass upon the question of identity.   They were the best portraits that could be had, and all that could be taken.   The persons were identified by other circumstances, the clothes they wore and the articles found upon their persons, and their general description; and the photographs were competent, although slight, evidence in addition to the other and more raliable testimony.   We are of the opinion that it was not error, under the circumstances, to admit them as evidence for what they were worth."

The photograph in question in the case at bar was conceded to be substantially correct.   In this note cases are given where photographs of a railway wreck were used in evidence.

At the last term of this court in Wood county we had a case in which the nature and extent of the plaintiff's injuries were made apparent to the jury partly through the aid of photographs of the injured limb.

The correctness of the photograph must be verified by the testimony of witnesses or it is inadmissible, but whether the evidence of its correctness is sufficient must be decided by the trial judge, whose decision thereon is not subject to exception.   If a photograph exhibits only a partial view of premises it is admissible.

The photograph in this case, being according to the testimony of the witnesses, substantially correct, it seems to us would be more distinctly evidenced, and more reliable evidence than the map or chart of a coal mine, the place where the injury happened, held to be evidence in the case of Foster Coal Co. v. Moherman, *supra.*   So we are of the opinion that we are not at liberty to consider this case upon the weight of the evidence; that is to say, if upon a consideration of such evidence as we have brought before us here—we should be of the opinion that the verdict is opposed to the weight thereof we would not be at liberty to reverse on that account.

We have, however, looked into this evidence with a great deal of care, and we have read every word of it, some of it many times over; and without stopping to take time to discuss it, other matters pressing upon the court, we are of the opinion that the verdict is not opposed to the weight of the evidence as exhibited in this bill of exceptions.

Plaintiff in error insists that the court erred in its charge. A request to charge was made by counsel for defendant below in these words:

"The jury are instructed that unless they find from the evidence that either Reed Hohly or Mrs. Hohly left or caused to be left the door in the cellar way open, and that the cellar way thus left open was continuously open from that time until the plaintiff fell into the cellar way, they must find for the defendants.

"Request refused, because substantially given in the charge."

We think it is substantially given in the charge, in this language on pages 133 and 134:

"The law of liability as applicable to Phoebe and Reed Hohly is different. It appears undisputed that Phoebe Hohly was the owner of the premises. There is evidence that she was the manager of the business and was the executive head of the business. Now Phoebe Hohly became liable by virtue of sustaining the relation not only for her own acts in the care and management of that property, but also for the acts of her agents and her servants in the opening and shutting of the door and the management of the door."

Thus far the charge states that her liability is limited to such actions of agents and servants as are done in the performance of her business. But the court proceeds:

"As to the liability of Reed Hohly, he is liable for his own acts only, as he had no servants or agents there for which he was responsible. He cannot be held liable in this case unless you find from the evidence and by a preponderance of the evidence, that he was the one that left the door open which caused the injury. If it appears from a preponderance of the evidence that Reed was the one who left the door open, and it was continuously open from the time he left it open until the injury occurred, and that he so negligently left it open and failed to close it while he was in the performance of his mother's business, then both will be jointly liable. There is no evidence tending to show that Mrs. Hohly herself left the door open or was negligent in the failure to close the door. If she is to be held liable under the testimony in this case, it must be because you find from the preponderance of the evidence that her servants or agents negligently exposed this cellar way to the plaintiff, and while in the performance of his mother's business."

So it is twice repeated. It is urged that the evidence fails to disclose that he was about the performance of his mother's business at the time the cellar was left open. We assume that he left the cellar door open—a fact which we hold the jury was justified in finding. Mrs. Hohly had reserved the cellar under this house, and had the right to use this cellar way in order to reach the cellar. Upon the day that Mrs. Sheely received this injury a Mr. Ray came to the premises, and went to another building on the same lot, the second floor of which was occupied by Mrs. Hohly and her family as a residence. He saw Mrs. Hohly, and investigated the water pressure upon those premises to ascertain whether it would be sufficient to run a certain washing machine that he was intending to put in for Mrs. Hohly, if the pressure proved to be sufficient. He made an investigation up stairs in her part of the premises, her son Reed being present, and finding the pressure insufficient there for the purpose, he and Reed went down stairs and went over to this house, opened the door and went down into the cellar, made an investigation there, and afterwards came out and went back to the other house

where Mrs. Hohly lived. Mrs. Hohly testifies. that she did not know they were about to go over to the cellar; that she did not direct Reed to go over there. Reed, upon being inquired of, testified as follows:

Q. "Whose suggestion was it to go down there?" A. "Well, Ray came over there."

The Court:

Q. "You were going, either your mother or yourself?" A. "Yes, sir."

Q. "About whose business were you when you did go down there?" A. "My mother's."

And at another place in the record he repeats that in the performance of that work of going down to the cellar to assist in testing the water pressure he was about his mother's business. It also appears from the testimony of Mrs. Hohly, as well as from the testimony of Mrs. Sheely as to what Mrs. Hohly said to her, that Mrs. Hohly did know soon after this injury occurred that Mr. Ray and her son Reed had been down in the cellar upon that very business, because she spoke of it to Mrs. Sheely. How or when she ascertained it, unless it was upon the very day that they went down there upon that business, does not appear; that any one had subsequently informed her of it does not appear. From all the circumstances—Mr. Ray being there upon that business, making the investigation up stairs, going with Reed to the other house to pursue the same investigation, and the fact that Mrs. Hohly was aware of their visit to the cellar upon that business—we think the jury were justified in concluding, notwithstanding her testimony on that subject, that she was aware on that very day that Mr. Ray and her son Reed had gone together to the cellar for the purpose of investigating the water pressure.

The other facts in the case I shall not take time to discuss. It is our conclusion that the verdict is fairly supported by the evidence. This disposes, I believe, of all the alleged errors.

Finding no error in the record, the judgment of the court of common pleas will be affirmed.